# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GOODWAY GROUP** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 18-0900** |
| **v.** | : | |
| | : | |
| **ANDREW SKLEROV,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.  AUGUST 15, 2018

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Goodway Group ("Plaintiff") filed a complaint against two of its former employees, Defendants Andrew Sklerov ("Defendant Sklerov") and Jeff Hastedt ("Defendant Hastedt") (collectively, the "Individual Defendants"), and their limited liability company, Defendant Brkthru Digital ("Defendant Brkthru") (collectively, with Individual Defendants, "Defendants"), in which Plaintiff alleges, *inter alia*, that Defendants wrongfully accessed and utilized Plaintiff's confidential information and trade secrets in violation of federal and state law. [ECF 1]. Before this Court are Defendants' respective motions to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction. [ECF 9, 10, 11].[1] In their motions, Defendants contend that Plaintiff failed to meet its burden of showing that Defendants purposefully directed their activities at Pennsylvania. The issues presented in the

---

[1] Defendants also move to dismiss for improper venue under Rule 12(b)(3) and failure to state a claim under Rule 12(b)(6). Because this Court concludes that it lacks personal jurisdiction over Defendants, it will not address Defendants' other arguments for dismissal.

motions have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendants' motions to dismiss are granted.[2]

**BACKGROUND**[3]

The following is a brief summary of the facts relevant to the determination of whether this Court has personal jurisdiction over Defendants:

> Plaintiff is a corporation organized under the laws of Delaware with its principal place of business in Jenkintown, Pennsylvania. It provides "media services and multi-location services." (Compl. at ¶ 8). Defendant Sklerov worked for Plaintiff from October 3, 2011, until September 15, 2017; and Defendant Hastedt worked for Plaintiff from December 8, 2013, until September 29, 2017. (Meade Decl. at ¶ 5).

> Defendant Sklerov is currently domiciled in North Carolina. (Sklerov Decl. at ¶ 13). He interviewed for his position with Plaintiff at a hotel in Philadelphia, Pennsylvania. (Wolk Decl. at ¶ 3). Defendant Sklerov was offered employment through an email from a California employee, and accepted his position by signing an employment agreement in New York and delivering it to the employee in California. (Sklerov Decl. at ¶¶ 25-26). During his employment, Defendant Sklerov reported first to a supervisor located in New York, then to one in Illinois, and then to one in Georgia. (*Id.* at ¶ 27). While working for Plaintiff, Defendant Sklerov's sales commissions were handled by a Georgia employee. (*Id.* at ¶ 28). He never worked or attended meetings in Pennsylvania, nor did he solicit any clients in Pennsylvania. (*Id.* at ¶¶ 31-33).

> During the relevant time period, Defendant Hastedt was, and continues to be, domiciled in Michigan. (Hastedt Decl. at ¶ 13). He received his offer of employment in Michigan through an email from Plaintiff's Senior Vice-President, Luke Andros, who lived and worked in Illinois. (*Id.* at ¶ 31). He signed his employment contract and delivered it to Mr. Andros in Illinois. (*Id.* at ¶ 32). During his employment with Plaintiff, Defendant Hastedt was assigned a sales territory spanning a number of states, which did not include Pennsylvania. (*Id.* at ¶ 33). Throughout his employment, Defendant Hastedt reported to Mr. Andros in Illinois, (*id.* at ¶ 34), and his sales commissions were handled

---

[2] In adjudicating the motion, this Court has also considered Plaintiff's responses, [ECF 15, 16, 17], and Defendants' respective reply briefs, [ECF 34, 36, 37].

[3] The jurisdictional facts set forth herein, where undisputed, are taken from the parties' pleadings and supporting declarations. Where disputed, the facts have been construed in Plaintiff's favor. The facts are derived from the following declarations submitted by the parties: Declaration of Mark Meade in support of Plaintiff's opposition to Defendants' motion to dismiss ("Meade Decl."), [ECF 16-1]; Declaration of David Wolk in support of Plaintiff's opposition to Defendants' motion to dismiss ("Wolk Decl."), [ECF 17-2]; Declaration of Jay Friedman in support of Plaintiff's motion for preliminary injunction ("Friedman Decl."), [ECF 15-3]; Declaration of Jeff Hastedt ("Hastedt Decl."), [ECF 11-1]; and Declaration of Andrew Sklerov ("Sklerov Decl."), [ECF 17-1].

by an employee in Georgia. (*Id*. at ¶ 35). Defendant Hastedt never worked or attended meetings in Pennsylvania. (*Id*. at ¶¶ 38-40).

While employed with Plaintiff, both Individual Defendants were paid through a Pennsylvania bank account, their retirement benefits were handled by a Pennsylvania employee, and a Pennsylvania address was listed on their medical plan paperwork. (Meade Decl. at ¶¶ 11, 14). Payroll was initially handled by a Pennsylvania employee, but then later handled by an employee based in Oregon. (*Id.* at ¶ 8). Plaintiff's email servers are located in New Jersey. (Hastedt Decl. at ¶ 22).

As a condition of their employment, the Individual Defendants signed employment agreements which included, *inter alia*, non-disclosure agreements for confidential information and trade secrets, non-solicitation agreements for one year after termination, an arbitration agreement, and a Pennsylvania choice of law provision. [ECF 11-2, Employment Agreement, at ¶¶ 6, 7, 13, 15]. During their employment, the Individual Defendants had access to Plaintiff's confidential information and trade secrets. (Compl. at ¶¶ 18, 22).

In May 2017, unbeknownst to Plaintiff, the Individual Defendants created Brkthru Digital, LLC, a digital media company based in Michigan and incorporated under the laws of Delaware that provides services similar to those of Plaintiff. (Friedman Decl. at ¶¶ 18-19). In September of 2017, the Individual Defendants resigned from Plaintiff's employ. (Meade Decl. at ¶ 5). Plaintiff alleges that, prior to the end of Defendant Hastedt's employment, he sent his client list, business list, and account list to his personal email account. (*Id*. at ¶¶ 36-38). These lists purportedly contained Plaintiff's confidential information and trade secrets. Also, after resigning from employment with Plaintiff, Defendant Hastedt allegedly accessed Plaintiff's computer network without permission and viewed Plaintiff's confidential information and trade secrets. (*Id*. at ¶ 42). Plaintiff asserts that Defendants have wrongfully utilized Plaintiff's confidential information and trade secrets, and have solicited Plaintiff's clients.[4] (Compl. at ¶¶ 29, 34). Following the Individual Defendants' departure from Plaintiff's employ, two more of Plaintiff's employees left to join Brkthru Digital (Friedman Decl. at ¶¶ 30, 32).

In the complaint, Plaintiff asserts the following claims:

- against Defendant Hastedt, breach of contract, conversion, and violations of the Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1832 *et seq.*, the Stored Communications Act (the "SCA"), 18 U.S.C. § 2701 *et seq.*, the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030 *et seq.*, the Uniform Trade Secrets Act (the "UTSA"), 12 Pa. Cons. Stat. § 5302, and the Pennsylvania Stored Communications Act (the "PASCA"), 18 Pa. Cons. Stat. § 5741 *et seq.*;
- against Defendant Sklerov, breach of contract and violations of the UTSA and the DTSA; and

---

[4] Notably, Plaintiff does not allege that Defendants have solicited any of its clients in Pennsylvania.

- against Defendant Brkthru: tortious interference with contractual relationships and violations of the UTSA and the DTSA.

**LEGAL STANDARD**

Pursuant to Rule 12(b)(2), a defendant may move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once the motion is presented, the "plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "[T]he plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id*. However, a "plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984).

"Once the motion [to dismiss] is made, plaintiff must respond with actual proofs, not mere allegations." *Id.*; *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("[T]o establish a prima facie case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant."). As such, "[t]he plaintiff must respond to the defendant's motion with 'actual proofs;' 'affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry.'" *Lionti v. Dipna, Inc.*, 2017 WL 2779576, at *1 (E.D. Pa. June 27, 2017) (quoting *Time Share*, 735 F.2d at 66 n.9); *see also Lehigh Gas Wholesale, LLC v. LAP Petro.*, LLC, 2015 WL 1312213, at *2 (E.D. Pa. Mar. 23, 2015) ("Plaintiff carries the burden to prove personal jurisdiction using 'affidavits or other competent evidence.'") (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)).

**DISCUSSION**

As noted, Defendants move to dismiss this action for lack of personal jurisdiction, asserting that Plaintiff has failed to make a prima *facie case* for specific personal jurisdiction. In support of their motions, the Individual Defendants have provided sworn declarations which emphasize the aspects of their employment that occurred outside of Pennsylvania and the infrequency and/or absence of contacts with this forum. Plaintiff has not contested the facts presented in the Individual Defendants' two declarations. Instead, Plaintiff argues that the declarations submitted from its own witnesses evince sufficient contacts with Pennsylvania to support its burden to establish personal jurisdiction. This Court disagrees.

"[A] district court may assert personal jurisdiction 'over non-resident defendants to the extent permissible under the law of the state where the district court sits.'" *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998)). Pennsylvania state law provides for jurisdiction over out-of-state defendants "to the fullest extent allowed under the Constitution of the United States . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). Therefore, this Court's analysis will be guided by federal due process requirements. *Applied Tech Int'l Ltd. v. Goldstein*, 2004 WL 2360388, at *2 (E.D. Pa. Oct. 20, 2004).

Personal jurisdiction is evaluated by the "minimum contacts" test established by *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945). Under this standard, a plaintiff must show that a nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (internal quotations and citation omitted);

5

*see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). The focus of the minimum contacts analysis is "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977), such that the defendant has fair warning that it may be subject to suit in that forum. *Marten*, 499 F.3d at 296.

A federal court may possess general or specific personal jurisdiction. *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). Because Plaintiff does not invoke this Court's general jurisdiction, [*see* ECF 15 at p. 3 n.4; ECF 16 at p. 4 n.1; ECF 17 at p. 4 n.1], this Court need only consider whether it has specific personal jurisdiction.[5]

Specific jurisdiction "is invoked when the claim is related to or arises out of the defendant's contacts with the forum." *Dollar Sav. Bank*, 746 F.2d at 211. In determining whether specific jurisdiction exists over a nonresident defendant, courts undertake a three-prong test:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

To satisfy the first prong of this test, a plaintiff must show that the defendants "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). This "reaching out" standard does not require that defendant physically enter the forum state. *See Burger King*, 471 U.S. at 476. Accordingly, "[m]ail and telephone communications sent by the defendant into the

---

[5] A court may exercise general jurisdiction over any party that has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

forum may count toward the minimum contacts that support jurisdiction." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993).

While a contract with a resident of the forum state is relevant to the jurisdictional analysis, "[t]he mere existence of a contract is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Burger King*, 471 U.S. at 478). Similarly, "informational communications in furtherance of that contract do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction." *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993). Rather, with regards to the contract, a court must examine "the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank*, 960 F.2d at 1223.

Courts should be careful to avoid mistaking a plaintiff's, or other individual's, contacts with the out-of-state defendant for evidence of the defendant's "reaching out" into the forum. *Time Share*, 735 F.2d at 65. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . ." *Id.* (citing *Hanson v. Denkla*, 357 U.S. 235, 253 (1958)). Likewise, "contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *O'Connor*, 496 F.3d at 317.

*Personal Jurisdiction over the Individual Defendants*[6]

All of Plaintiff's claims against Defendant Hastedt stem from his alleged wrongful access and use of Plaintiff's confidential information and trade secrets.[7] Plaintiff points to its contractual relationship with Defendant Hastedt and his purported reliance, during his employment, on Plaintiff's Pennsylvania employees to support the argument that this Court has personal jurisdiction over these claims. Defendant Hastedt counters that his minimal contacts with Pennsylvania are insufficient to establish personal jurisdiction.

While presiding over cases involving out-of-state defendants employed by, or in other contractual relationships with, in-state plaintiffs, district courts in this circuit have required strong evidence of purposeful contacts. *Team First Consulting, LLC v. Hangliter*, 2007 WL 1302440, at *5 (D.N.J. Apr. 27, 2007). Infrequent or minimal communications do not provide an adequate basis for jurisdiction. *SMB Consulting & Investing LLC v. Apple Valley Waste Serv., Inc.*, 2011 WL 2937432, at *3 (E.D. Pa. July 21, 2011) (holding that defendant's mail and telephone communications with plaintiff in Pennsylvania were not sufficient to find personal jurisdiction, even in conjunction with defendant's contract with plaintiff that was executed in Pennsylvania); *Team First Consulting,* 2007 WL 1302440, at *5 ("informational communications in furtherance of a contract" were not sufficient to find jurisdiction over a defendant who was employed by an in-state corporation).

---

[6] In cases involving multiple claims and defendants, the Court may evaluate jurisdiction by individual defendant and claim, or may group the analysis of "certain factually overlapping claims" when appropriate. *O'Connor*, 496 F.3d at 318 n. 3; *see also Remick*, 238 F.3d at 255. Given the nature of the facts under which Plaintiff's claims arise, this Court will evaluate jurisdiction over each Defendant individually, grouping the analysis of claims when suitable.

[7] The breach of contract claim also involves Defendant Hastedt's alleged solicitation of Plaintiff's clients and employees in violation of his employment agreement. Plaintiff presents no evidence, however, that those clients and former employees were based in, or solicited from, Pennsylvania.

Here, Plaintiff has failed to proffer any evidence of communications between Defendant Hastedt and any of Plaintiff's employees in Pennsylvania, let alone the requisite frequent and/or consistent communications. At best, Plaintiff's proffered evidence merely *implies* that Defendant Hastedt may have communicated with Pennsylvania employees with respect to such administrative functions as payroll and/or employee benefits. (*See* Meade Decl. at ¶¶ 6-18). There is no direct evidence, however, of any emails, phone calls, or other communications between Plaintiff's Pennsylvania employees and Defendant Hastedt.

Furthermore, the presence of Plaintiff's other employees in Pennsylvania does not evince Defendant Hastedt's purposeful contacts. A plaintiff's coincidental presence in the forum state during phone or digital communications regarding an employment contract does not equate to defendant's reaching into the forum, even when the defendant is aware of plaintiff's location in the forum. *Randall v. Davin*, 2013 WL 6191344, at *5 (W.D. Pa. Nov. 26, 2013). A defendant "cannot be found to have purposefully directed his activities at this jurisdiction by placing a cellular telephone call or sending an email when [defendant] had no control over whether [plaintiff] received it in Cleveland, Ohio, Pittsburgh, Pennsylvania, Knoxville, Tennessee, or somewhere else." *Id*. Similarly, Defendant Hastedt had no control over where his limited communications with Plaintiff were received or where certain administrative aspects of his employment were handled.

Defendant Hastedt's contacts with Plaintiff's employees outside of Pennsylvania also cannot serve as evidence of purposeful contacts with Pennsylvania. Courts in this circuit have held that contract proceedings that occur outside of the forum state "indicate[] a lack of targeting of the forum," especially where the defendant was not an active participant in the negotiation of the agreement. *Reg'l Employers' Assur. Leagues Voluntary Employees Beneficiary Tr. v.*

9

*Michael O'Brien, D.M.D., P.C.*, 2013 WL 6050494, at *7 (E.D. Pa. Nov. 15, 2013). Defendant Hastedt received his offer of employment and signed his employment agreement outside of Pennsylvania. (Hastedt Decl. at ¶¶ 31-32). He delivered his employment contract to his supervisor, who lived and worked outside of Pennsylvania. (*Id*. at ¶ 32). During his entire employment, Defendant Hastedt continued to report directly to this same supervisor who was located outside of Pennsylvania. (*Id*. at ¶ 34). These facts reflect the interstate nature of Defendant Hastedt's employment, with no emphasis specifically on Pennsylvania. As such, Defendant Hastedt's interactions with Plaintiff's employees outside of Pennsylvania provide no support for personal jurisdiction, and even suggest "a *lack* of targeting of the forum." *O'Brien*, 2013 WL at *7 (emphasis added).

The Pennsylvania choice of law provision in Mr. Hastedt's employment agreement, while relevant to the jurisdictional analysis, is not dispositive. *Id.* at *6 (holding that a choice of law provision "is not the sole, or even primary, basis" on which the court makes jurisdictional determinations); *see also Hampton-Meridian Grp., Inc. v. Venturella*, 2008 WL 2446697, at *6 (W.D. Pa. June 16, 2008) (holding that a choice of law provision, even in light of other contacts, was not sufficient to find personal jurisdiction over an individual defendant). Notably, Defendant Hastedt's employment agreement also contains an arbitration provision which dictates arbitration "in the city in which you were or were last employed." [ECF 11-2 at ¶ 13]. Being that Defendant Hastedt was last employed in Michigan, the arbitration agreement would seem to indicate at least as much association with Michigan as the choice of law provision does with Pennsylvania. In sum, Plaintiff has failed to present evidence sufficient to show purposeful availment by Defendant Hastedt to this forum. Under the circumstances, this Court finds that it does not have personal jurisdiction over Defendant Hastedt.

The claims against Defendant Sklerov are also based on his alleged use of Plaintiff's confidential information and trade secrets, and the analysis as to personal jurisdiction is similar to that for Defendant Hastedt. Plaintiff points to similar factors to assert jurisdiction over Defendant Sklerov, namely, that certain administrative functions of his employment involved Plaintiff's Pennsylvania office. This evidence is also too threadbare to show purposeful contacts with Pennsylvania *by Defendant Sklerov*. Though Defendant Sklerov did interview for his position in Pennsylvania and may have occasionally communicated with Pennsylvania employees for administrative functions of his employment, these facts alone cannot support jurisdiction. Like Defendant Hastedt, Defendant Sklerov received his offer of employment and signed his employment contract outside of Pennsylvania. (Sklerov Decl. at ¶¶ 25-26). Defendant Sklerov also reported to several different supervisors throughout his employment with Plaintiff, each who lived and worked outside of Pennsylvania. (*Id*. at ¶ 27). Plaintiff provides no direct evidence of consistent communications between its Pennsylvania employees and Defendant Sklerov. The significance of the Pennsylvania choice of law provision in his employment agreement, as addressed previously, is lessened by the arbitration provision which dictates arbitration outside of Pennsylvania. Defendant Sklerov also never solicited clients in Pennsylvania. Under these circumstances, this Court lacks personal jurisdiction over Defendant Sklerov.

Plaintiff attempts to overcome the Individual Defendants' overall lack of contacts with Pennsylvania by pointing to two recent decisions from this District which address personal jurisdiction over out-of-state, former employees of Pennsylvania corporations—*Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348 (E.D. Pa. 2016) and *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, 2017 WL 714043 (E.D. Pa. Feb. 23, 2017). Plaintiff argues that the facts

in these two decisions—both of which found specific jurisdiction—are sufficiently similar to those in the present case to support personal jurisdiction. This Court disagrees.

In *Numeric Analytics*, the court held that it had specific personal jurisdiction over the out-of-state defendants, though the question was "close." 161 F. Supp. 3d at 355. The court noted that the defendants had "*continuously* communicated with [the plaintiff,] a Pennsylvania company[,] about their employment, ran all invoices for the work they performed through Pennsylvania, and were paid by their Pennsylvania employer." *Id.* (emphasis added). The defendants' employment contracts with the plaintiff also included a Pennsylvania choice of law provision. *Id*. Pivotal to the court's analysis, however, was the fact that "*all* of the essential functions that allowed Defendants to earn a living were channeled through Pennsylvania." *Id.* (emphasis added). The court concluded that "each of [defendants' contacts with Pennsylvania], by itself, might not be enough to confer jurisdiction," but, "the combination of these contacts is enough to find that Defendants 'purposefully directed' their activities into Pennsylvania." *Id*.

Similarly in *Neopart*, the court found jurisdiction over an out-of-state defendant, noting that it was a "close case." *Neopart*, 2017 WL 714043, at *6. The court emphasized that "communicating with Pennsylvania was a *necessary* component of the [defendant's] employment. [The defendant's] immediate supervisor . . . was located in Pennsylvania and the two exchanged emails approximately three times a week." *Id.* (emphasis added). The defendant "*regularly* contacted [plaintiff's] facility in Pennsylvania for questions related to parts, emergency orders and other issues . . . [A]pproximately 30 to 50 percent of the parts supplied to [defendant's] project came from [plaintiff's] facility in Honey Brook, PA." *Id*. (emphasis added). The court determined that the combination of all of these factors provided enough contacts for specific personal jurisdiction. *Id*.

12

Plaintiff baldly concludes that, like in the two cases addressed above, "all of the essential functions" of the Individual Defendants employment were "channeled through" Pennsylvania. In support, Plaintiff asserts that employee files are stored in Pennsylvania, that the retirement benefits of all of its employees are overseen by a Pennsylvania employee, and that employees are paid through a Pennsylvania bank. These facts, however, do not show purposeful availment by the Individual Defendants, or that "all of the essential functions" were "channeled through" Pennsylvania. To the contrary, these proffered instances focus on the activities of *Plaintiff* and its employees in Pennsylvania, not on the requisite conduct of the Individual Defendants needed to assert personal jurisdiction. Moreover, the Individual Defendants' job functions were not dependent on contacts in Pennsylvania as were those of the defendants in *Numeric* and *Neopart*. In those two cases, the defendants had to reach into Pennsylvania for *all* of the substantive functions of their employment. For example, in *Neopart* the defendant relied on parts delivered directly from Pennsylvania to supply his project. In addition, unlike defendants in those two cases, the Individual Defendants did not have "consistent" communications with Pennsylvania employees, and they were supported in many ways by employees located outside of Pennsylvania. These distinctions make the conclusions in *Numeric* and *Neopart* inapposite. Upon consideration of the circumstances, this Court finds that Plaintiff has failed to present evidence sufficient to show that the Individual Defendants purposefully directed their activities at Pennsylvania. This Court, therefore, lacks personal jurisdiction over the Individual Defendants.

*Personal Jurisdiction over Defendant Brkthru*

The lack of personal jurisdiction over the Individual Defendants for the aforementioned claims also defeats any assertion of jurisdiction over Defendant Brkthru for claims of violations

of the UTSA and the DTSA.[8] To establish personal jurisdiction over Defendant Brkthru, Plaintiff relies solely on the evidence addressed above with respect to Individual Defendants and the law which effectively imputes their conduct as principals of the company onto Defendant Brkthru. [ECF 15 at pp. 4-5]. Because Plaintiff's evidence is insufficient to establish personal jurisdiction over the Individual Defendants, it is equally insufficient to establish personal jurisdiction over Defendant Brkthru. Plaintiff has presented no additional proof that Defendant Brkthru has purposefully directed its activities specifically toward Pennsylvania.[9] Therefore, this Court lacks personal jurisdiction over Defendant Brkthru.

**CONCLUSION**

For the foregoing reasons, Defendants' respective motions to dismiss for lack of personal jurisdiction are granted. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[8] As noted, Defendant Brkthru is a limited liability company organized under the laws of Delaware with its principal place of business in Michigan. (Hastedt Decl. at ¶ 4).

[9] The Third Circuit instructs district courts to employ an alternative test – the *Calder* Effects Test – when the traditional test does not establish jurisdiction over a plaintiff's tort claims. This test allows for jurisdiction when the plaintiff shows:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Marten*, 499 F.3d at 297 (citation omitted); *Calder v. Jones*, 465 U.S. 783 (1984).

Because the traditional analysis failed to find personal jurisdiction over Defendant Hastedt for conversion and Defendant Brkthru for tortious interference with contractual relationships, the *Calder* Effects test is appropriate. However, Plaintiff does not mention this test in its responses, nor has it proffered facts to support the elements of this test, particularly the third prong. "The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth." *Marten*, 499 F.3d at 297. For the same reasons that Plaintiff's evidence falls short of satisfying the "intentionally directed" element in the traditional analysis, it fails to prove the similar "expressly aimed" element of the Effects Test.